UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL R. DIXON,<br><br>       Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br><br>       Defendant.<br>_____/ | No. C-09-04869 JCS<br><br>**ORDER DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION [Docket Nos. 23, 26]** |

## I.   INTRODUCTION

Plaintiff, Michael R. Dixon, seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his Application for disability insurance and Supplemental Security Income ("SSI") benefits under of the Social Security Act ("SSA"). Plaintiff asks the Court to reverse the Commissioner's denial of benefits and remand with instructions to award benefits or, in the alternative, to remand for additional administrative proceedings. For the reasons stated below, the Court DENIES Plaintiff's Motion for Summary Judgment, GRANTS Defendant's Motion for Summary Judgment and dismisses Plaintiff's action with prejudice.[1]

## II.   BACKGROUND

### A.   Procedural Background

Plaintiff filed a claim for disability benefits on September 20, 2004, alleging disability as of May 15, 2003 due to a low back injury. Administrative Record ("AR") at 18. That claim was

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

denied at the initial level on December 27, 2004 and on reconsideration on February 23, 2005. *Id*. Plaintiff did not pursue that claim to the hearing level.

On August 18, 2005, Plaintiff filed claims for disability benefits and SSI benefits, again alleging disability as of May 15, 2003 due to a low back injury. *Id*. The claims were denied initially on September 30, 2005 and on reconsideration on January 17, 2006. *Id*. Plaintiff filed a timely request for a hearing, which was conducted on May 3, 2007 in Ukiah, California. *Id*. At the hearing, Plaintiff was represented by attorney Betty Herrera. *Id*. Plaintiff testified at the hearing. *Id*. In addition, vocational expert Malcolm Brodzinsky testified at the hearing. *Id*. Administrative Law Judge ("ALJ") Charles D. Reite presided over the hearing. *Id*.   In a decision dated July 23, 2007, the ALJ found that Plaintiff was not disabled and therefore was not entitled to disability insurance benefits or SSI benefits under the SSA. *Id*. at 24. Plaintiff requested administrative review, and the Appeals Council denied the request on August 11, 2009, making the ALJ's decision the final decision of the Commissioner. *Id*. at 6.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), which gives the Court jurisdiction to review the final decision of the Commissioner. He has filed a motion for summary judgment asking the Court to reverse the decision of the Commissioner, and the Commissioner has responded with a cross-motion for summary judgment seeking affirmation of the Commissioner's final decision.

### B.   **Plaintiff's Background**

Plaintiff was born on June 2, 1961 and was 41 years old on his alleged onset date. AR at 89. He graduated from college in 1985 and completed training in carpentry in 1986. *Id*. at 139. Prior to his alleged onset date, he held a series of jobs that included maintenance worker, driver/sanitary worker and carpenter. *Id*. at 152. Plaintiff testified that he stopped working in May 2003 as a result of an injury to his lower back. *Id*. at 606-607.

### C.   **Plaintiff's Medical History**

On May, 16, 2003, Dr. Adalberto Renteria saw Plaintiff for an injury to Plaintiff's lower back that occurred the previous day. AR at 229 ("Doctor's First Report of Occupational Injury or

2

Illness"). The report stated that Plaintiff was unable to perform his usual work due to the injury. *Id*. On June 17, 2003 a lumbar spine MRI was done to evaluate the impact of the injury. *Id*. at 202. The findings of the MRI were described as follows:

1. Degenerative disk changes at L2-3 do not produce significant central canal or neural foraminal stenosis. It is stable compared to the prior examination performed on 3-21-97;

2. Degenerative disk and facet changes, L4-5, produce only minimal flattening of the ventral aspect of the thecal sac and mild-to-moderate neural foraminal stenosis. Despite the neural foraminal stenosis, no definite impingement on the L4 nerve roots is demonstrated within the neural foramina. This is also stable.

3. Foci of altered signal in the L5 and L4 vertebrae are most consistent with foci of fatty infiltration or cavernous hemagioma. There is slight enlargement in the focus of L4. Despite this enlargement, a benign lesion is most likely, particularly given the very minimal growth over six years and signal characteristics.

*Id*.

On July 22, 2003, Dr. Michael Cohen, of Sutter Health @ Work, completed a Work Status Report listing the following "Modified Duty Restrictions:" no lifting/carrying over 10 pounds, no bend/twist, stand/walk/climb no more than 2 hours a day and no more than 20 minutes at a time, and sit no more than 2 hours a day and no more than 15 minutes at a time. *Id*. at 211.

Treatment records from Dr. Allen Gruber from October 29, 2003 through January 27, 2004 indicate that Plaintiff continued to experience lower back pain for bilateral L4-5 and L5-S1 radiculopathy. *Id*. at 344-62. Plaintiff received lumbar epidural steroid injections on September 18, 2003 and January 28, 2004. *Id*. at 337, 371. In addition, Dr. Gruber performed lumbar selective nerve root block procedures on March 31, 2004 and November 3, 2004. *Id*. at 289, 325. In the report from the November 3, 2004 procedure, Dr. Gruber stated:

Mr. Dixon reports having had ≈3+ months of excellent major partial relief of his chronic intractable back pain following L4-5 bilateral selective nerve root blocks last March. . . .HE NOTED TODAY THAT MOST OF HIS RESIDUAL PAIN FOLLOWING THE MARCH PROCEDURE AFFECTED HIS MID AND UPPER LUMBAR AREA AND THAT THE LOWER PRTION [sic] WAS MOST RELIEVED. He agreed to undergo L3-4 level root blocks as well today as the L4-5s in order to attempt addressing this contributory element of his chronic pain.

*Id*. at 289.

3

In a report to the California Workers' Compensation Division dated April 20, 2004, Dr. Gruber described Plaintiff's pain as follows:

> Pt. reports decreased, but still present on constant basis, LBP.  Slight decrease in "sciatic" pain into both buttocks, and LE's. c/o right calf cramping on constant basis despite walking and stretching.

*Id.* at 320.

On October 7, 2004, Dr. Thomas Miles, a Qualified Medical Examiner, examined Plaintiff in connection with a California Worker's Compensation claim. *Id.* at 419 - 431.  Dr. Miles also reviewed Plaintiff's medical records and issued a report based on the exam and medical records on October 26, 2004. *Id.*  In his report, Dr. Miles diagnosed Plaintiff with "[m]ulti-level degenerative disc disease, lumbar spine, with mild disc bulge L4/5." *Id.* at 427.  Dr. Miles stated that Plaintiff "was utilizing no supportive device or brace [at the examination and] was able to ambulate without need of any assistive aids." *Id.* at 423.  In describing the neurologic examination, Dr. Miles stated:

> The patient was noted to have diffuse complaints of tingling to light tough in most of the major dermatomes below his knee.  Waddell's tests were inappropriate with tenderness to light touch in the right sacroiliac area.  With stimulated axial loading and rotation he would complain of pain.  It was felt that there was over-reaction.  There was no discrepancy, however, in the straight leg raising testing, and I could find no regional disturbances that were abnormal.

*Id.* at 424.  Under the heading, "Objective Factors," Dr. Miles wrote:

> The physical examination demonstrated positive findings of inappropriate responses on Waddell's testing x3 with marked loss of range of motion at the lumbar spine in all planes.  It was felt that, to some extent at least, the patient's minimal range of motion was [a] self imposed restriction.

*Id.* at 429.  He concluded that "Mr. Dixon currently experiences disability with respect to his lumbar spine that should preclude him from heavy lifting, contemplating that he has lost half of his pre-injury capacity for lifting." *Id.*

On December 4, 2004, Dr. Nicholas Butowski, a consulting physician with the California Department of Social Services ("DDS") completed a comprehensive orthopedic evaluation. *Id.* at 280-284.  According to Dr. Butowski, Plaintiff stated "that the pain is always present in his low back radiating down both lower extremities on an intermittent basis, feeling very tingly and electric-like

4

in sensation [and that] [t]here is patchy sensory loss on both legs, especially at the big toes and between the big toes." *Id*. at 280. Plaintiff further reported to Dr. Butowski that his "pain is improved by lying supine, heat to the area , or using a cane for support; aggravated by sitting or standing greater than 15 minutes." *Id*. at 281. Dr. Butowski noted that during the examination, Plaintiff sat "uncomfortably," frequently changing his position and alternating between sitting and standing. *Id*. at 281. Plaintiff required assistance to get on the examining table. *Id*. Dr. Butowski's diagnosis was "[b]ack pain, possibly due to disk pathology and/or stenosis, and likely possibly L5 radiculopathy." *Id*. at 284. In his functional assessment, Dr. Butowski stated as follows:

> Based on the history and physical, I would expect the claimant to stand and/or walk for about two hours in and eight-hour workday and sit about six hours with breaks every 30-60 minutes to change position. He does not require an assistive device, but one may be helpful for long distances or uneven terrain. The claimant can lift and/or carry objects of up to 10 pounds on an occasional or frequent basis . . . He is posturally limited in that repetative bending, stooping, crouching or climbing on an occasional or frequent basis will be difficult for him. There are no manipulative limitations with regard to gross or fine reaching, feeling, fingering, or handling, and no environmental limitations.

*Id*.

Plaintiff sought emergency care on January 12 and 28, 2005 and February 28, 2005 due to flare-ups of his back pain. *Id*. at 469, 480, 494. Plaintiff went to the emergency room again on June 9, 2005 and August 15, 2005 for flare-ups in his back pain. *Id*. at 447, 460.  During each of these visits he was given injections of Toradol and Norflex. *Id*.

On February 9, 2005, Dr. Michael F. Charles, a Qualified Medical Examiner, interviewed and examined Plaintiff in connection with a California Worker's Compensation claim. *Id*. at 437. In addition, Dr. Charles reviewed some of Plaintiff's medical records, as well as the report completed by Dr. Miles discussed above. *Id* at 437-445. In his report, dated April 6, 2005, Dr. Charles noted that Plaintiff arrived at the examination room "utilizing a cane in his right hand and appeared to have a significant antalgic gait favoring the right lower extremity." *Id*. at 440. Dr. Charles continued,

> The patient appeared uncomfortable thoughout history taking and arose several times during the interview period of this evaluation.

5

> The examination of the back and lower extremities noted no scoliosis, normal kyphosis, loss of normal lordotic curve which was flat. . . .Standing for the evaluation, he stood with his right leg forward with knee bent. He was unable to walk on his right heel, performing a quarter squat claiming difficulty.
>
> There was palpable tenderness in the low back, right worse than left. On palpation of the right buttocks, there was radicular pain shooting down to the right great toe L5 distribution.
>
> The patient had 50 % normal extension, 75 % normal forward flexion, was able to reach within 20 inches of the floor with the knees extended with difficulty. Lateral bending to the right and left was also limited by 50%.
>
> Neurologic examination positive in the supine position on the right. Decreased sensation L5 distribution on the right. . . .

*Id*. Based on his review of the June 2003 MRI, Dr. Charles concluded that Plaintiff had suffered a "significant injury" on May 15, 2003 and that Plaintiff "remain[ed] in pain." *Id*. at 442. He found that Plaintiff was limited to light work with no heavy lifting. *Id*. at 443.

Dr. Charles issued a supplemental report on June 15, 2005 addressing the significance of videotape footage of plaintiff unloading a pick-up truck. *Id*. at 432-434. In it, he stated as follows:

> Today I was asked to review a videotape sub rosa film, performed on 4/7/05. The patient was observed to be removing several articles from the back of his small pickup truck, two large barrels and some bags that appeared to be either fertilizer or some other type of material. The patient was witnessed as rolling the large wheelbarrows to the side of the truck and then assisting them to the ground. Then there was a female person rolling the barrels away. The patient then took one or two large bags again to the edge of the truck and plopped them onto a dolly, and they were removed by the other person in the video, who was a woman.
>
> At no time in the film did the patient lift from ground upward. The activities were brief encounters and did not represent any type of extensive hours of activity. Thus, these videos would not serve to change the undersigned's opinion. As noted in the Guidelines for Work Capacity, disability resulting in Limitation to Light Work contemplates the individual can do work in a standing or walking position with a minimum demand of physical effort. In my opinion, these sub rosa films did show minimal demand of physical effort. Therefore, it would not contradict the rating noted above for his injury as it pertains to the 5/15/03 incident.

*Id*. at 433.

Dr. Miles also was asked to offer an opinion as to the sub rose videotape, including his reaction to Dr. Charles' opinion of the significance of that tape. *Id*. at 416. Dr. Miles wrote,

> In light of the sub rosa videotape, my opinions are definitely changed with regard to the level of disability, which I precluded him from heavy lifting. Obviously, he seems capable of heavy lifting, at least on three occasions in rapid sequence as noted while lifting the sacks

6

> and wine barrels from the back of a truck. Therefore, it is my opinion that I would preclude him more appropriately from heavy work contemplating he had lost approximately one-quarter of his fringing capacity for performing such activities as bending, stooping, lifting, pushing, pulling, climbing and other activities involving comparable physical effort.
>
> It is my opinion that this patient's disability is far less than that of Dr. Charles in that it is obvious that lifting wine barrels from the back of a truck is far more than would be the description of light work. This was indeed heavy work.
>
> . . .
>
> It should be recalled that on examination this patient demonstrated inappropriate responses on Waddell's testing on 3 out of 5. He was noted to have marked loss of range of motion of his lumbar spine in all plances. It was felt that some of that loss of motion was probably self-imposed restrictions.
>
> At the end of the videotape, he was noted to be bending forward while letting down the wine barrel indicating that his range of motion indeed is probably greater than when I examined him.
>
> Therefore, my revised opinions are as noted above as a consequence of this videotape, which seems quite revealing in my opinion.

*Id*. at 417.

The record also contains medical notes from Dr. Michael Tran, a pain management specialist, who treated Plaintiff during the period January 2005 through April 2007. *See id*. at 542-67. These reports describe Plaintiff's lower back pain as "constant" and "high level[]." *Id*. at 544, 547. In a Workers' Compensation form dated April 12, 2006, Dr. Tran wrote that Plaintiff had limitations which affected his ability to work but none that affected his ability to participate in education and training. *Id*. At 549. On April 23, 2007, Dr. Tran completed a Residual Functional Capacity Questionnaire in which he stated that Plaintiff had the following limitations:

- sit no more than 15 minutes at one time;
- stand no more than 15 minutes at one time;
- sit no more than 2-3 hours in an 8-hour day;
- stand no more than 2-3 hours in an 8-hour day;
- walk no more than 2 hours in an 8 hour day;
- walk every 30 minutes for 5-10 minutes;
- ability to shift positions at will from sitting, standing or walking;

7

1 • ability to take breaks at random intervals, as frequently as 13-30 minutes for between 15 and 45 minutes;

• ability to use assistive device;

• never lift more than 10 pounds; lift up to 10 pounds rarely

• rarely twist, stoop, crouch/squat.

*Id*. at 570-73.

### D. Function Report by Linda Allen

Linda Allen, Plaintiff's roommate, completed a Function Report on September 21, 2005. *Id*. at 168-175. In the report, she states that Plaintiff does not do too much during the day because he "has to lay down & rest back of legs 4 to 5 times a day." *Id*. at 168. She stated that he "can't sleep [because] his feet hurt." *Id*. at 169. She stated that Plaintiff prepares meals for himself three times a day and spends about 20 minutes preparing each meal. *Id*. She noted that since his injury, Plaintiff's meals are "faster and easyer [sic] to cook." *Id*. She stated that Plaintiff does his own laundry, which takes him approximately 20 minutes a week. *Id*. She stated that Plaintiff pays to have other housework done. *Id*. at 171. Addressing Plaintiff's ability to get around, Allen stated that Plaintiff walks 6 or 7 blocks every day but that he can't drive due to his pain. *Id*. She stated that Plaintiff does his own shopping, walking once a week to a Safeway that is three blocks from his house and spending 30 to 40 minutes shopping. *Id*. She stated that Plaintiff has no hobbies because he has to lay down 4 to 5 times a day and that he "can't do anything" because his pain is so bad. *Id*. at 172. In her "Remarks," Allen states,

> I see that it takes him time to fill out forms, he can't sit for more than 15 min., 2 times a day before in great pain & gets worse & has to lay down. He also needs a cane after fall in November '04 & went to E.R. for fall.

*Id*. at 175.

### E. The Administrative Hearing

The ALJ held an administrative hearing on Plaintiff's claims on May 3, 2007. At the hearing, Plaintiff testified that he stopped working in 2003 due to a lower back injury. *Id*. at 607. According to Plaintiff, since his injury, he has experienced "[p]ain in the lower back, radiating pain

8

in the sciatic nerve down both legs . . . all day, every day." *Id*. at 607. He characterized his pain as a seven on a scale of one to ten and described the pain as feeling like he has "a potato peeler on the back of [his] legs." *Id*. at 607-608. According to Plaintiff, he has tingling in his legs and feet. *Id*. at 608. He further testified that this pain is exacerbated if he sits for more than 15 minutes at a time or stands more than 15 to 20 minutes at a time. *Id*. He testified that he can walk no more than three blocks, slowly, and that he uses a cane to walk. *Id*. at 608. According to Plaintiff, the cane was prescribed by either Dr. Tran or Dr. Gruber. *Id*. Plaintiff testified that he takes Tradazone and Ambien to sleep, but nonetheless he is unable to sleep more than three hours at a time before he is woken up by sciatic nerve pain. *Id*. He testified that in the morning he is tired and has low energy. *Id*. at 609.

When he is awake, Plaintiff said, he has trouble concentrating due to the stabbing pains in his back and legs. *Id*. at 610. Plaintiff testified that he is able to take care of his personal needs, though he uses a bar for support in the shower. *Id*. at 611. Plaintiff stated that he does not perform household tasks, which are instead performed by Plaintiff's roommate, Linda Allen. *Id*. He stated that he does not drive for more than 15 minutes at a time due to his sciatic nerve pain. *Id*. at 612. When he is in the car, he testified, he must lay down flat. *Id*. at 612. Similarly, Plaintiff testified that during the course of the day, he must lie down four or five times on a heating pad with his feet elevated to alleviate his back and leg pain. *Id*. at 616.

Subsequently, the ALJ questioned the vocational expert ("VE"), Malcolm Brodzinsky. According to Brodzinsky, Plaintiff's past relevant work as a truck driver was semi-skilled and had heavy exertional demands. *Id*. at 621-622. The ALJ posed several hypotheticals to the VE. First, he asked the VE to assume the following limitations:

> . . . limited to a sedentary level of . . .exertional activity. Require a sit/stand option to maintain comfort. . . . The postural activities all at an occasional level and as far as climbing there'd be no ladders, scaffolds, that sort of thing. In addition to that there'd be some, another non-exertional limitation. I'd say a mild limitation on the concentration, pace and persistence. . . a 10 percent deficit . . . . Is there any past work that you identified that could be accomplished?

9

*Id*. at 632.  The VE responded that there was no past work that could be performed by an individual with these limitations but that such an individual could work as a final assembler of optical goods in an optical lab, D.O.T. code 713.687-018, classified as unskilled, with sedentary physical demands. *Id*.  The VE noted that the D.O.T. does not address the sit/stand limitation but that based on his own expertise, this position could be performed by an individual with such a limitation.  *Id*. at 633.  The V.E. further testified that there are 1,200 to 1,500 such positions in the San Francisco Bay area and 35,000 to 40,000 in the national economy.  *Id*.  The V.E. testified that an individual with these limitations would also be able to work as an order clerk in food and beverage, an unskilled position with sedentary physical demands.  *Id*.  He testified that there are 6,000 plus of such positions in the San Francisco Bay area and 180,000 such positions in the national economy.  *Id*.

Next, the ALJ added to the first hypothetical the need to use a "one-handed assistive device for any kind of lengthy ambulation, say a half block or more."  *Id*.  With this limitation, the V.E. testified, the jobs as an order clerk would be cut by 60%  because 50 to 60% percent of the jobs as an order clerk require the individual to walk to get the orders and bring them back to the counter.  *Id*. at 634.  Such an individual would still be able to work as an optical assembler, however, because this job is "for the most part stationary."  *Id*.

In his third hypothetical, the ALJ asked the V.E. to assume the same limitations of the second hypothetical and then add to it a 25% impairment in concentration, pace and persistence.  *Id*.  In response, the V.E. testified that it was "pretty clear that there would be no jobs available in either the national or regional economy" for an individual with these limitations.  *Id*.

The V.E. also responded to questions posed by Plaintiff's counsel concerning the impact on an individual's ability to work as an optical assembler of needing to frequently alternate between sitting and standing.  *Id*. at 635.  The V.E. stated that up to two minutes of interruption would not be a problem but that "[a]nything over a couple minutes of interruption to sit or stand and adjust focus that would greatly reduce the numbers probably by at least 75 percent."  *Id*.  The V.E. further testified that an individual who needed to take unscheduled breaks every 15 to 30 minutes lasting 15 to 45 minutes would be unable to perform any job.  *Id*.

10

### F. The ALJ's Five-Step Analysis and Findings of Fact

Disability insurance benefits are available under the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1). A claimant is only found disabled if his physical or mental impairments are of such severity that he is not only unable to do his previous work, but also "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proof in establishing a disability. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996).

The Commissioner has established a sequential five-part evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). At Step One, the Commissioner considers whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 1520(a)(4)(i). If he is, the Commissioner finds that the claimant is not disabled, and the evaluation ends. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two.

At Step Two, the Commissioner considers whether the claimant has "a severe medically determinable physical or mental impairment," or combination of such impairments, which meets the duration requirement in 20 C.F.R. § 404.1509. 20 C.F.R. § 1520(a)(4)(ii). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In addition, the physical or mental impairment (or combination of impairments) must have lasted, or must be expected to last, for a continuous period of 12 months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment for the required duration, the Commissioner finds the claimant not disabled and the evaluation ends at this step. C.F.R. § 404.1520(c). Age, education, and work experience are not considered at this step. *Id.*

11

At Step Three, the Commissioner considers whether the claimant's impairment, or impairments, "meets or equals" one of the Social Security Administration's compiled listings of impairments that the Commissioner has established as disabling. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets one of these listed impairments, the Commissioner will find the claimant disabled. If the impairment does not meet one of the listed impairments, the process continues to Step Four.

At Step Four, the Commissioner considers whether the claimant, in light of his residual functional capacity ("RFC"), can continue to perform work he has performed in the past. 20 C.F.R. § 404.1520(a)(4)(iv). Based on the relevant medical evidence and other evidence in the record, the Commissioner will assess the claimant's RFC to determine whether the claimant can do his past work. 20 C.F.R. § 404.1520(e). If the RFC assessment determines that the claimant can perform his past work, the Commissioner will find him not disabled. 20 C.F.R. § 404.1520(f). If the RFC assessment determines that the claimant cannot perform his past work, then the claimant proceeds to Step Five of the evaluation.

At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can "make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner will find him disabled. *Id.* At Step Five, the burden shifts to the Commissioner to show that the claimant, in light of his impairments, age, education, and work experience, can adjust to other work in the national economy, and that such a job actually exists. *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995).

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 15, 2003, the alleged onset date. *Id*. at 20. Therefore, he continued to Step Two.

At Step Two, the ALJ found that the Claimant had the following severe impairments: degenerative disc disease of the lumbar spine and chronic low back pain. *Id*.

12

At Step Three, the ALJ found that the Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 21.

At Step Four, the ALJ found that Plaintiff had the following residual functional capacity:

> . . .the claimant has the residual functional capacity (RFC) to perform sedentary work with a sit/stand option; occasional climbing of ramps or stairs, no climbing of ladders ropes or scaffolds; occasional balancing, stooping, kneeling, crouching or crawling; mild limitation in concentration, persistence and pace; and requires the use of a cane for ambulation.

*Id*. In support of this conclusion, the ALJ cited to the conclusions of Qualified Medical Examiners Dr. Miles and Dr. Charles, "both of whom found claimant only precluded from heavy lifting and capable of light/sedentary work and eligible for vocational rehabilitation to lighter work." *Id*. He also noted that Dr. Miles had found Waddell's testing to be positive and that Dr. Charles had referred to video observation of Plaintiff doing "light activity, unloading a small pick-up truck." *Id*. The ALJ further referenced Dr. Butowski's conclusion that Plaintiff could do sedentary work. *Id*.

The ALJ rejected Dr. Tran's opinion to the extent that Dr. Tran found "much greater" limitations in the April 23, 2007 medical source statement ("MSS") than Drs. Miles and Charles had found. *Id*. The ALJ offered the following reasons for his conclusion: 1) the MSS did not carry Dr. Tran's signature but instead, appeared to have been signed by a nurse or physician's assistant; 2) Dr. Tran was not an orthopedic specialist while both Drs. Miles and Charles are orthopedic specialists; and 3) at no time has any treating doctor recommended any aggressive treatment such as surgery. *Id*. The ALJ also noted that in the April 12, 2006 Workers' Compensation form, Dr. Tran stated that Plaintiff could participate in education training – an opinion the ALJ found to be "more consistent with the other medical evidence than Dr. Tran's MSS of April 23, 2007." *Id*.

The ALJ also found that while Plaintiff had presented medical evidence showing limitations in his exertional capacity, the limitations were not so severe as Plaintiff claimed. *Id*. In particular, the ALJ concluded that Plaintiff's statement that he needed to lie down several times a day was not supported by the reports of Drs. Miles, Charles or Butowski. *Id*. Similarly, he rejected Ms. Allen's statement in the Function Report that Plaintiff needed to lie down several times a day, finding that it

13

was not supported by the medical record. *Id*.   He also found that Ms. Allen's Function Report indicated "a greater level of daily activity" than Plaintiff admitted. *Id*. at 22.  The ALJ went on to address the "intensity, persistence, and limiting effects" of Plaintiff's pain. *Id*. at 22.  After listing the factors that must be considered in evaluating the credibility of a claimant's pain testimony, the ALJ concluded as follows:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

*Id*.

### G. Contentions of Parties

Plaintiff asserts that the ALJ erred in a number of respects and therefore, his decision should be reversed.  First, Plaintiff argues that the ALJ erred when he adopted the opinion of consultative physician Dr. Butowski that Plaintiff could perform a full range of sedentary work and rejected the opinion of treating physician Dr. Tran that Plaintiff could *not* perform the full range of sedentary work.  Second, Plaintiff claims that in light of the extensive argument presented to the Appeals Council that Plaintiff had a listed impairment, the ALJ's conclusory statement that Plaintiff's impairment did not meet the criteria of a listed impairment is reversible error under *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir.).  Third, Plaintff asserts that the ALJ's credibility finding as to Plaintiff's pain testimony is improper because he did not cite clear and convincing reasons in support of his conclusion.

In its Opposition/Cross-Motion, Defendant argues that the ALJ's decision is free of legal error and supported by substantial evidence.  First, Defendant asserts that the ALJ did not err when he adopted Dr. Butowski's opinion as to Plaintiff's limitations and rejected the opinion of Dr. Tran, citing to: 1) a videotape showing Plaintiff performing light work while his Worker's Compensation Claim was pending; 2) clinical evidence, including testing positive for Waddell signs, indicating that Plaintiff was exaggerating his symptoms; 3) the opinions of Dr. Charles and Dr. Miles, both of whom are orthopedists, indicating that Plaintiff's limitations were not so severe as Dr. Tran opined.

14

Second, Defendant argues that the ALJ adequately set forth the reasons for his conclusion that Plaintiff did not have a listed impairment, noting that even though he did not offer specific reasons for his conclusion, he did include a summary of the evidence upon which his conclusion was based. As a result, Defendant concludes, the basis for the ALJ's decision at Step Three is apparent. Third, Defendant argues that the ALJ gave clear and convincing reasons for finding that Plaintiff's pain testimony was not completely credible, including the positive Waddell's signs, the videotape of Plaintiff performing light activity, the opinions of Drs. Charles and Miles, the daily activities described in Linda Alen's report, and the fact that Plaintiff has not undergone any aggressive treatment such as surgery.

## III.   ANALYSIS

### A.   Legal Standard

When reviewing the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner which are free from legal error and "supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "such evidence as a reasonable mind accepts as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means "more than a mere scintilla" but "less that a preponderance." *Id. Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Even if the Commissioner's findings are supported by substantial evidence, they should be set aside if proper legal standards were not applied when using the evidence to reach a decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). In reviewing the record, the Court must consider both the evidence that supports and detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

### B.   Whether the ALJ erred in Rejecting the Opinion of Dr. Tran

Plaintiff asserts that the ALJ's decision should be reversed because he did not offer adequate reasons for rejecting the opinion of Dr. Tran, a treating physician, as to Plaintiff's limitations. Although the ALJ may consider many sources, the opinion of a treating physician normally is given special weight. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If the ALJ decides to disregard the treating physician's opinions, he "must make findings setting forth specific, legitimate

15

reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).   The Court concludes that the ALJ met this requirement.

In his decision, the ALJ cited to: 1) the fact that the examining physicians are orthopedists while Dr. Tran is not; 2) the daily activities described by Plaintiffs roommate, Linda Allen, including doing his own laundry, preparing his onw meals three times a day and walking several blocks to the store once a week; and 3) Dr. Tran's own statement in the April 12, 2006 Workers' Compensation form that suggested less severe limitations than stated in the April 23, 2007 Function Report.  The Court finds these reasons to be both specific and legitimate.

Plaintiff's reliance on *Prague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987) is misplaced.  In that case, the ALJ adopted the opinion of the examining physician over that of the treating physician as to the severity of the claimant's impairments where the underlying medical findings of the treating and the examining physicians were similar, namely, that the claimant suffered from degenerative disc disease.  812 F.2d at 1230.  The ALJ offered "no specific reasons" for rejecting the opinion of the treating physician as to the claimant's impairments and only made two oblique references to the treating physician, which the court of appeals found were "totally inadequate as a statement of reasons for disregarding a treating physician's opinion."  *Id*. at 1230.  In contrast to the facts in *Prague v. Bowen*, the ALJ offered specific and legitimate reasons for rejecting the opinion of Dr. Tran as to Plaintiff's limitations.  Accordingly, reversal of the Commissioner's decision is not warranted on this ground.

### C. Whether the ALJ Erred at Step Three By Failing to Set Forth Reasons for Finding that Plaintiff's Impairments Did not Meet a Listing

Plaintiff asserts that the ALJ's finding that he is not disabled should be reversed because he did not offer specific reasons in support of his conclusion, citing *Marcia v. Sullivan*, 900 F. 172 (9th Cir. 1990).  In *Marcia*, the claimant presented medical evidence to establish that his impairments were equivalent to a Listed impairment.  900 F.2d at 176 (citing Social Security Ruling 83-19 for the rule that "equivalency can be established when a listed impairment for which the medical findings are missing from the evidence but for which other medical findings of equal or greater significance

16

1 and relating [to] the same impairment are present in the evidence"). The ALJ found that the
2 claimant had failed to establish equivalence but did not offer any reasons in support of that
3 conclusion. *Id*. The court of appeals reversed the ALJ's decision on the basis that his conclusory
4 finding as to equivalence was "insufficient to show that the ALJ actually considered equivalence."
5 *Id*.

6 In this case, in contrast to *Marcia*, the ALJ provided a detailed review of the medical
7 evidence in the record, which the court finds to be an "adequate statement of the 'foundations on
8 which the ultimate factual conclusions are based.'" *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th
9 Cir. 1990). In *Gonzales*, the court of appeals affirmed the Commissioner's finding that the claimant
10 was not disabled even though the ALJ had not stated what evidence supported his conclusion that
11 the claimant's impairments did not meet or equal a listing. *Id*. The court reasoned that "[t]he
12 regulations merely require the Secretary to review the symptoms . . .[and ] [i]t is unecessary to
13 require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different
14 section of the listing of impairments." *Id*. The court concluded that the ALJ's four-page evaluation
15 of the evidence was sufficient to show the "foundations on which" he based his ultimate factual
16 conclusions. *Id*. Similarly, in this case, the ALJ's discussion of Plaintiff's medical history is
17 sufficient to show that he considered whether Plaintiff's impairments met or equaled a listed
18 impairment.

19 Therefore, the Court rejects Plaintiff's assertion that the Commissioner's decision should be
20 reversed on this basis.

21 **D.     Whether the ALJ Properly Disregarded Plaintiff's Pain Testimony**

22 Plaintiff asserts that the Commissioner's decision should be reversed because the ALJ failed
23 to offer sufficient reasons for finding that Plaintiff's pain testimony was not completely credible.
24 The Court disagrees.

25 A claimant's credibility is the degree to which the claimant's statements can be believed and
26 accepted as true. SSR 96-7p at 4. The ALJ must make credibility findings to determine the truth of
27 a claimant's description of his symptoms and pain. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.

17

1996) (holding ALJ responsible for determining credibility and resolving conflicts in medical testimony). When making such findings, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements. The reasons for the findings must be grounded in the evidence and articulated in the determination or decision." *Id*. Testimony cannot be discredited solely because it is not supported by objective medical evidence. *See* SSR 96-7p; *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997). Further, when there is no affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005) (citation omitted).

The Ninth Circuit has articulated several factors that can be considered in determining whether a claimant's pain or symptom testimony is credible. These include the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light*, 119 F.3d at 792-93. If a claimant has proffered medical evidence that indicates the presence of an impairment that could cause some pain, an ALJ may not base his disbelief of a claimant's testimony on the sole fact that it is unsupported by medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The Ninth Circuit's rationale for this rule lies in the fact that "pain is a subjective phenomenon." *Id.*

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR at 22. The ALJ offered several reasons for this, including: 1) a videotape indicating that Plaintiff could perform heavy work, contrary to his assertions; 2) Waddell's test results that led at least one of the examining physicians to believe Plaintiff was exaggerating his symptoms; 3) the objective medical evidence, including the opinions of Drs. Miles, Charles and Butowski, that Plaintiff could perform light work; 4) the daily activities listed by Plaintiff's roommate, Linda Allen; and 5) the fact that Plaintiff has not undergone any aggressive treatment, such as surgery, to alleviate his pain. The Court finds that these reasons for discounting Plaintiff's pain testimony are clear and

convincing.

Therefore, the Court rejects Plaintiff's assertion that the Commissioner's decision should be reversed on this basis.

**IV.  CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion, DENIES Plaintiff's motion, and dismisses Plaintiff's claims with prejudice.

IT IS SO ORDERED.

Dated:  September 24, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge